IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

```
-------------------------------------------------------x
                                                       :
BARBARA VALENTE                                        :
                                                       :    3:02 CV 1472 (JGM)
v.                                                     :
                                                       :
KEITH GRAHAM                                           :
                                                       :
-------------------------------------------------------x    DATE: JANUARY 12, 2004
```

RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On August 21, 2002, plaintiff Barbara Valente initiated this action against defendant Keith Graham, alleging that while acting under color of state law, he knowingly subjected plaintiff to an unreasonable and warrantless search and seizure in violation of rights secured to plaintiff by the Fourth Amendment of the United States Constitution, thus violating 42 U.S.C. §§ 1983 & 1988. (Dkt. #1). Defendant filed his Answer, with four affirmative defenses, on November 13, 2002. (Dkt. #8). The parties consented to trial before this Magistrate Judge on August 25, 2003. (Dkt. #24).

On August 5, 2003, defendant filed his Motion for Summary Judgment and brief in support[1] and Local Rule 9(c)1 Statement of Material Facts.[2] (Dkts. ##19-21). On August 29, 2003, this Magistrate Judge ordered defendant to file a supplemental Local Rule 56(a)1 Statement and set deadlines for additional submissions by both parties. (Dkt. #28).[3]

---

[1]Attached to the brief are the following three exhibits: affidavit of Keith Graham, sworn to on July 23, 2003 ["Defendant's Aff't"](Exh. A); affidavit of Joseph Valente, sworn to on July 25, 2003 ["Joseph Valente Aff't"](Exh. B); and affidavit of Alaric Fox, sworn to on July 21, 2003 ["Fox Aff't"](Exh. C).

[2]Now Local Rule 56(a).

[3]The procedural history behind this motion is somewhat convoluted. On August 20, 2003, plaintiff filed her brief in opposition on grounds that defendant failed to file a Local Rule 56 Statement. (Dkt. #22). The next day, plaintiff filed a revised brief in opposition, asserting that defendant's Local Rule 56 Statement is "fatally defective" and must be stricken. (Dkt.

Thereafter, on September 8, 2003, defendant filed his Local Rule 56(a)1 Statement. (Dkt. #30). Plaintiff filed her brief in opposition and Local Rule 56(a)(2) Statement on September 29, 2003.[4] (Dkts. ##32-33). For the reasons stated below, defendant's Motion for Summary Judgment (Dkt. #19) is granted.

## I. FACTUAL SUMMARY

The factual summary is based on defendant's Local Rule 56(a)(1) Statement of Facts ["Defendant's Statement"], plaintiff's Local Rule 56(a)(2) Statement of Facts ["Plaintiff's Statement"][5] and documents cited therein and consequently does not represent factual findings of the Court.

In September 2000, plaintiff and her then husband, Joseph Valente, were involved in divorce proceedings in Connecticut Superior Court. (Defendant's Statement ¶ 2; Joseph Valente Aff't, ¶¶ 2-3; Plaintiff's Statement I ¶ 2; Plaintiff's Aff't ¶ 4). On September 29, 2000, an "Ex Parte Restraining Order" ["Order"] was issued by the Connecticut Superior Court ordering Joseph Valente, in pertinent part, to "[r]efrain from entering the family dwelling or the dwelling of the applicant . . . 72 Dickinson Rd., Haddam CT., 06438"

---

#23). On August 26, 2003, defendant filed his reply to plaintiff's brief and revised brief in opposition (Dkt. #25) and a Local Rule 9(c)1 Statement. (Dkt. #26).

On September 2, 2003, plaintiff filed her Motion to Strike "Revised Local Rule 9(c)1 Statement," which this Magistrate Judge denied without prejudice as moot three days later. (See Dkt. #29 and 9/5/03 endorsement thereon).

[4]Attached to the Statement are the following four exhibits: affidavit of Barbara Valente, sworn to on August 25, 2003 ["Plaintiff's Aff't"](Exh. 1); copy of Ex Parte Restraining Order issued by the State of Connecticut Superior Court, dated September 29, 2000 ["Order"](Exh. 2); copy of correspondence from Master Sergeant Patrick O'Hara, Commanding Officer at State of Connecticut Department of Public Safety, to plaintiff, dated June 25, 2001 ["O'Hara Letter"](Exh. 3); and copy of excerpt from deposition transcript of Joseph Valente, taken on June 7, 2001 ["Joseph Valente Depo."](Exh. 4).

[5]Plaintiff's Local Rule 56(a)(2) Statement appears in two parts: Response to Defendant's Claims of Fact [I]; and Plaintiff's Statement of Material Facts [II].

["dwelling" or "residence'"]. (Joseph Valente Aff't, ¶ 4; Plaintiff's Statement II ¶ 1 & Order; Plaintiff's Aff't ¶ 5). Additionally, the Order immediately revoked Joseph Valente's gun license and required him, within two days of becoming subject to the Order, to transfer all firearms in his possession to "a person who is eligible to possess them or surrender them to the Commissioner of Public Safety." (Plaintiff's Statement II ¶ 7 & Order; Joseph Valente Depo. at 6). Moreover, the Order provided that it would be a crime for Joseph Valente to enter the dwelling in violation of the Order. (Plaintiff's Statement II ¶ 8 & Order).

Joseph Valente retained possession of the keys to gain entry to the residence (Defendant's Statement ¶ 5; Joseph Valente Aff't, ¶ 14; Plaintiff's Statement I ¶ 5), and on September 30, 2000, he contacted the Connecticut State Police for the purpose of accompanying him into the dwelling. (Defendant's Statement ¶ 6; Joseph Valente Aff't, ¶ 10; Plaintiff's Statement I ¶ 6; Plaintiff's Statement II ¶ 2). Defendant, a Connecticut State Police Trooper, met Joseph Valente and his brother Paul Valente, and the former informed defendant of the existence of a Court order. (Defendant's Statement ¶¶ 1, 8 & 11; Defendant's Aff't ¶¶ 2, 4 & 12; Joseph Valente Aff't ¶¶ 10-11; Plaintiff's Statement I ¶¶ 1 & 11; Plaintiff's Statement II ¶ 2; Plaintiff's Aff't, ¶ 6). However, Joseph Valente did not have a copy of the Order in his possession and defendant did not verify its existence. (Defendant's Statement ¶ 11; Defendant's Aff't ¶ 6; Joseph Valente Aff't ¶ 12; Plaintiff's Statement I ¶ 11; Plaintiff's Statement II ¶¶ 2-3; Plaintiff's Aff't, ¶ 6). Thereafter, defendant, upon request of Joseph Valente, accompanied him into the dwelling. (Defendant's Aff't, ¶13; Valente Aff't, ¶ 14; Plaintiff's Statement II ¶ 4; Plaintiff's Aff't, ¶ 8). Defendant did not possess a valid warrant to enter the dwelling. (Plaintiff's Statement II ¶ 6; Plaintiff's Aff't, ¶ 10).

Plaintiff was not home when defendant, Paul Valente and Joseph Valente entered

3

the dwelling. (Defendant's Statement ¶ 13; Defendant's Aff't ¶¶ 12 & 22; Joseph Valente Aff't, ¶ 13; Plaintiff's Statement I ¶ 13). Once inside, Joseph Valente removed a gun collection and gun safe from the dwelling (Defendant's Statement ¶ 14; Plaintiff's Statement I ¶ 14), and transferred the collection and the safe to Paul Valente, a valid gun permitee. (Defendant's Statement ¶ 9; Defendant's Aff't, ¶¶ 5, 14-17, 19-20; Joseph Valente Aff't, ¶¶ 9 & 15; Joseph Valente Depo. at 5-6).[6] Subsequently, plaintiff reported to the State Police that Joseph Valente had taken or stolen various personal items from the dwelling in addition to the gun collection. (Defendant's Statement ¶ 15; Plaintiff's Statement I ¶ 15). Thereafter, Joseph Valente was arrested for entering plaintiff's home. (Plaintiff's Statement II ¶ 9 & O'Hara Letter; Joseph Valente Depo. at 8). The Connecticut State Police concluded after investigation that "[defendant] incorrectly allowed [Joseph] Valente to remove firearms and the gun safe from the residence." (Plaintiff's Statement II ¶ 10 & O'Hara Letter).

## II. DISCUSSION

The standard for summary judgment is well-established. The moving party is entitled to summary judgment if it demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The standard for granting summary judgment "mirrors the standard for a directed verdict under Federal Rules of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (citation omitted). Upon motion, after

---

[6]In paragraph 9 of Defendant's Statement, defendant asserts: "On September 30, 2000, Paul Valente possessed a valid gun permit in the State of Connecticut." (Defendant's Statement ¶ 9)(emphasis added). However, plaintiff disagrees: "A family violence protective order having been issued against Joseph Valente, he had no right to possess any firearm." (Plaintiff's Statement ¶ 9)(emphasis added). In that plaintiff incorrectly responded to "Joseph" and not "Paul," it will be assumed that Paul Valente's possession of a valid gun permit on September 30, 2000 was undisputed as between the parties.

adequate time for discovery, Rule 56(c) mandates the entry of summary judgment against a party

> who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

This showing may be made by "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." FED. R. CIV. P. 56(c). However, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he [or she] is ruling on a motion for summary judgment or for a directed verdict. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255 (citation omitted). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. Id. at 248 (citation omitted). A "material fact" is a disputed fact the resolution of which will affect the "outcome of the suit under the governing law." Id. A "dispute about a material fact is 'genuine,'. . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The party moving for summary judgment must "carry its burden of showing the absence of any genuine issue of fact." Adickes v. S.H. Kress & Co., 398 U.S. 144, 153 (1970). "On summary judgment the inferences to be drawn from the underlying facts contained in the [moving party's] materials must be viewed in the light most favorable to the party opposing the motion.'" Id. at 158-159 (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). Defendant seeks summary judgment on the following grounds: (1) plaintiff's assertion of a simple negligence claim against defendant is a legally unfounded claim pursuant to § 1983; (2) defendant had valid consent to enter plaintiff's home and thus did not violate her Fourth Amendment right to be free from a warrantless and unreasonable search and seizure; and (3) because defendant's acts were lawful and reasonable, he is entitled to qualified immunity. (Dkt. #20, at 3-4).[7]

A. LEVEL OF INTENT FOR SECTION 1983 CLAIM

Defendant contends that because plaintiff's Complaint alleges simple negligence by defendant and not the intentional or reckless state of mind necessary to establish a § 1983 claim, defendant is entitled to judgment as a matter of law. (Dkt. #20, at 6-7). In response, plaintiff asserts that summary judgment should be granted sparingly when a party's state of mind is at issue, and should not be granted here because defendant had actual knowledge of the Order and nonetheless allowed Joseph Valente to enter the residence in

---

[7]Defendant additionally argued that to the extent that plaintiff asserts a property claim, such claim is misplaced because plaintiff, in her Complaint, alleges that Joseph Valente, and not defendant, wrongfully took some of her personal property from her residence. (Id. at 3 & 6). Therefore, according to defendant, any property action should have been brought against Joseph Valente. (Id. at 6). In her Complaint, plaintiff seeks "judgment against defendant for . . . damages . . . all as provided by Section[] 1983 . . .," and plaintiff does not assert a property action. (Dkt. #1, at 3). Additionally, in plaintiff's brief in opposition, she reasserts that "[c]ontrary to the defendant's argument, this is an action brought solely for a Fourth Amendment violation . . . ." (Dkt. #32, at 1). Therefore, only plaintiff's § 1983 claims are at issue, and not a property claim.

6

direct contravention of the Order. (Dkt. #32, at 5-6).

As the Second Circuit held two years ago:

> . . . Section 1983 does not require any intent to violate constitutional rights. As a result, § 1983 plaintiffs need only demonstrate intent where the underlying constitutional deprivation, such as an equal protection violation under the Fourteenth Amendment, calls for it. And § 1983 does not itself import an intent standard into an underlying constitutional deprivation that lacks such a requirement.
>
> . . . The standard used to judge whether such a [Fourth Amendment] violation occurred is that of <u>objective reasonableness</u>. . . . [A]n officer's subjective intent is irrelevant under this standard. . . . [C]hallenged searches are judged without regard to the underlying intent or motivation of the officers involved. . . . [T]he reasonableness inquiry . . . is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.

<u>Hudson v. New York City</u>, 271 F.3d 62, 68 (2d Cir. 2001)(multiple citations & internal quotations omitted)(emphasis added). <u>See also Haynes v. City of New London</u>, 2002 WL 1204956, at *3 (D. Conn. May 17, 2002). Courts look to whether the police officer's belief was objectively reasonable at the moment he or she entered a plaintiff's premises. <u>Hudson</u>, 271 F.3d at 69.

At issue here is whether the conduct of defendant, in entering the dwelling, deprived plaintiff of a right afforded by the Fourth Amendment or whether defendant acted in an objectively reasonable fashion. <u>See Hudson</u>, 271 F.3d at 68. Both defendant and Sergeant Fox attest that in other circumstances where a restraining order has been issued, they have accompanied individuals inside of homes. (Defendant's Aff't, ¶ 11; Fox Aff't, ¶¶ 4-5). Thus, although defendant did not see the Order prohibiting Joseph Valente from entering the residence, and may not have known that the Order expressly prohibited Joseph Valente from entering the dwelling (Defendant's Statement ¶¶ 11-12; Defendant's Aff't, ¶¶ 4 & 6; Joseph Valente's Aff't, ¶¶ 4, 10, 12; Plaintiff's Statement I ¶ 11; Plaintiff's Statement II ¶ 2;

Plaintiff's Aff't, ¶ 6), a reasonable jury could determine that defendant's actions were objectively reasonable. However, because defendant, after learning of the existence of the Order from Joseph Valente, did not attempt to obtain a copy of the Order to see if it prohibited Joseph Valente's entrance into the residence, a reasonable jury also could infer that defendant's action were objectively unreasonable. (Defendant's Statement ¶¶ 11-12; Defendant's Aff't, ¶ 4; Joseph Valente's Aff't, ¶¶ 4, 10, 12; Plaintiff's Statement I ¶ 11; Plaintiff's Aff't, ¶ 6). Furthermore, because an investigation by the Connecticut State Police determined that defendant "<u>incorrectly</u>" allowed Joseph Valente to enter the premises (O'Hara Letter)(emphasis added), a genuine issue of fact exists as to whether defendant's acts were objectively unreasonable, precluding summary judgment on this issue.

B. CONSENT

The Fourth Amendment protects persons in their homes against "unreasonable searches and seizures." U.S. CONST. amend. IV. "It is well settled that a warrantless search is per se unreasonable under the Fourth Amendment–subject only to a few specifically established and well-delineated exceptions." McCardle v. Haddad, 131 F.3d 43, 48 (2d Cir. 1997)(internal quotations, multiple citations & emphasis omitted). A defendant in a § 1983 action has the burden of showing that a warrantless search was valid because it fell within one of the exceptions to the warrant requirement, with the principal exceptions including searches on consent. Id. (multiple citations omitted).

Defendant contends that while he did not have a warrant to enter plaintiff's residence, valid consent to search obviates the need for a warrant and defeats plaintiff's claim.[8] (Dkt. #20, at 7-10). According to defendant, because Joseph Valente was co-

---

[8] While defendant argues that his warrantless "search" of the dwelling was valid, he notes: "[f]or purposes of this motion, it will be assumed that the defendant engaged in a search [but] [i]n reality, [he] simply accompanied Mr. Valente into the residence." (Dkt. #20, at 8,

8

owner of the residence, had personal possessions inside of the residence and maintained keys to gain entry, he had legal authority to consent to defendant's entry into the residence. (Id. at 8). Therefore, defendant asserts that because Joseph Valente gave him "unequivocal consent" to enter the dwelling, plaintiff's claim fails. (Id. at 8-9).

Defendant concedes that "[t]here is perhaps a legal question, which need not be definitively resolved for purposes of this motion, as to whether Mr. Valente had <u>actual authority</u> to consent to the search by . . . defendant," because the Order "[a]rguably . . . barred Mr. Valente from entering the family home" and thus "he . . . lost his legal right to consent to entry by . . . defendant." (Dkt. #20, at 9)(emphasis in original).[9] Defendant continues, "Notwithstanding the resolution of [the] issue [of actual authority], . . . defendant's entry into the home was unquestionably valid as . . . defendant relied in good faith on Mr. Valente's <u>apparent authority</u> to consent to the entry." (Id.)(emphasis in original). Defendant contends that because Joseph Valente was co-owner of the residence, contacted the State Police for the purpose of transferring the guns, opened the front door of the residence with his key, and allowed defendant to enter, defendant had a reasonable belief in his authority to consent to the entry, thus making it valid. (Id. at 10).

In response, plaintiff contends that defendant had knowledge of the Order, knew

---

n.3)(emphasis omitted). Therefore, for purposes of this motion, a "search" will be presumed.

[9]This Court could locate only one analogous case on this issue, in which an estranged wife accessed her home and consented to a search even though a restraining order prohibited her from residing at home. <u>United States v. Kerchum</u>, 71 F.Supp. 2d 779 (N.D. Ohio 1999). The district court held that <u>apparent authority</u> may exist in such a circumstance but, without explicitly stating, suggested that actual authority did not exist by virtue of the order. <u>Id.</u> at 782.

that a court had ordered Joseph Valente not to enter the residence,[10] and in plaintiff's absence, admitted Joseph Valente to the residence without a warrant, without the existence of an emergency, or without contacting the court which had issued the Order. (Dkt. #32, at 6-7). According to plaintiff, under these facts, defendant fails to meet his burden of proving valid consent because no reasonable police officer could have thought Joseph Valente's consent was valid. (Id. at 6).

In the absence of voluntary consent to search a residence by a third person with actual legal authority, a third person with apparent authority can consent to the search. Illinois v. Rodriguez, 497 U.S. 177,181 (1990). As the United States Supreme Court explained:

> [I]n order to satisfy the reasonableness requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government . . . is not that they always be correct, but that they always be reasonable. . . . Because many situations which confront officers . . . are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be . . . reasonable. . . [and there is] no reason to depart from this general rule with respect to facts bearing upon the authority to consent to a search.

Id. at 185-86 (citations & internal quotations omitted). "[W]here police officers reasonably, though mistakenly, believe that a third party has authority to consent to the search of a residence, their entry without a warrant is not unreasonable under the Fourth Amendment." United States v. Kerchum, 71 F.Supp. 2d 779, 782 (N.D. Ohio 1999), citing Rodriguez, 497 U.S. at 186.

A warrantless entry is valid when based upon consent of a third party whom police, at the time of entry, <u>reasonably believe</u> to possess common authority over the premises, but

---

[10]As previously indicated, whether defendant knew that the Order prohibited Joseph Valente from entering the dwelling remains disputed between parties. (Defendant's Statement ¶ 12; Defendant's Aff't, ¶ 6; Joseph Valente's Aff't, ¶ 12; Plaintiff's Statement I ¶ 12; Plaintiff's Aff't, ¶¶ 5-6).

who in fact does not. Rodriguez, 497 U.S. at 186. "[E]ven if the third party did not have the requisite relationship to the premises, and therefore lacked authority to give valid consent, official reliance on his consent may validate the search if it was reasonable for the officers to believe he had the requisite relationship." United States v. Elliott, 50 F.3d 180, 186 (2d Cir. 1995)(emphasis added)(citing Rodriguez, 497 U.S. at 179), cert. denied, 516 U.S. 1060 (1996). The reasonableness inquiry of the determination of consent is to "be judged against an objective standard: would the facts available to the officer at the moment . . . warrant a man of reasonable caution in belief that the consenting party had authority over the premises? If not, then the warrantless entry without further inquiry is unlawful . . . .But if so, the search is valid. " Rodriguez, 497 U.S. at 188 (citations & internal quotations omitted).

In Kerchum,[11] an estranged wife who, like Mr. Valente in this case, was the subject of a restraining order, requested a police officer to enter the family residence in order to inspect the property after a suspected burglary. 71 F.Supp. 2d at 781. The officer "knew that at some prior time there was a restraining order that prohibited [the estranged wife] from being [in the family residence but he] did not know that any such restraining order was in effect" that day. Id. at 782. The district court held that "based upon the information available to him at the time, [the police officer] reasonably believed that [the estranged wife] had authority to consent to the search of her home." Id. Thus, because there was apparent authority to consent, the court upheld the search. Id.

In this case, before entering the residence, Joseph Valente requested defendant to accompany him for the purpose of transferring possession of his gun collection to a lawful gun permitee, because Connecticut state law requires this transfer when a party is served with an ex parte restraining order. (Defendant's Statement ¶¶ 6-10 & 13-14; Defendant's

---

[11]See note 10 supra.

Aff't, ¶¶ 3-5, 7-8; Joseph Valente Aff't, ¶¶ 7-12, 14-15; Plaintiff's Statement I ¶¶ 6 & 13-14; Plaintiff's Aff't, ¶¶ 6-8). Joseph Valente was co-owner of the residence, had personal possessions inside the dwelling, displayed keys to gain entry, and while he stated that he had been served with the Order, he did not inform defendant that the Order prohibited him from entering the dwelling. (Defendant's Statement ¶¶ 3-5, 11-12; Defendant's Aff't, ¶¶ 6 &13; Joseph Valente's Aff't, ¶¶ 5-6, 12, 14; Plaintiff's Statement I ¶¶ 3, 5, 11; Plaintiff's Statement II ¶¶ 2-4; Plaintiff's Aff't, ¶¶ 5-8). Joseph Valente then personally accompanied defendant into the dwelling. (Defendant's Statement ¶¶ 7 & 13; Defendant's Aff't, ¶¶ 8, 12-14; Joseph Valente's Aff't, ¶¶ 10-11, 14; Plaintiff's Statement I ¶ 13; Plaintiff's Statement II ¶ 4; Plaintiff's Aff't, ¶ 8). Based upon this information available to defendant at the time, he reasonably believed that Joseph Valente had the requisite authority to consent to the search of the residence. See Kerchum, 71 F.Supp. 2d at 782.

### C. QUALIFIED IMMUNITY

Defendant contends that should this Court not grant his motion on the foregoing arguments, defendant would remain entitled to summary judgment because he enjoys qualified immunity. (Dkt #20, at 10). According to defendant, while the right to be free from a warrantless search is clearly an established constitutional right, valid consent obviates the need for a warrant and defeats an unreasonable search claim. (Id. at 11-12). Defendant asserts that in light of the valid consent, he is entitled to qualified immunity because it was objectively reasonable for defendant to believe that valid consent was given to enter the home or officers of reasonable competence could disagree on whether valid consent was given to enter the home. (Dkt. #20, at 12). Further, according to defendant, because qualified immunity from suit is a privilege that is effectively lost if a case is erroneously permitted to go to trial, and because the costs and expenses of trial should be avoided

where the defense is dispositive, the question of immunity should be resolved at the earliest possible stages of litigation. (Id. at 11).

In response, plaintiff contends that because defendant had actual knowledge of the Order, assisted Joseph Valente not only in violating the Order but in searching through plaintiff's house and taking into his possession the gun collection, no police officer could have possibly thought such actions lawful and defendant has not satisfied his burden of pleading and proving qualified immunity. (Dkt. #32, at 6-7).

In light of the conclusion reached in Section II.B supra, there is no need to address this issue.

### III. CONCLUSION

Accordingly, for the reasons stated above, defendant's Motion for Summary Judgment (Dkt. #19) is granted.

Dated at New Haven, Connecticut, this 12th day of January, 2004.

                                                     /s/
                                   Joan Glazer Margolis
                                   United States Magistrate Judge